FILED

2013 Sep-30  PM 01:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROBERTA JANE HORN,                  )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   CIVIL ACTION NO. 2:11-CV-3536-SLB
                                    )
CAROLYN W. COLVIN,                  )
Acting Commissioner of Social Security,  )
                                    )
            Defendant.              )

## MEMORANDUM OPINION

The plaintiff, Roberta Jane Horn, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for disability insurance benefits.  Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.  STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  Bloodsworth, at 1239 (citations omitted).  Substantial evidence is

"such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.   This court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm the Commissioner's decision if it is supported by substantial evidence.  Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003).

## II. STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish entitlement for a period of disability, a claimant must be disabled.  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purpose of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, the Social Security regulations outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether she has a severe impairment;

(3)     whether her impairment meets or equals one listed by the Secretary;

2

(4)     whether the claimant can perform her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord  McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job."  Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the present case, the plaintiff is seeking Title II disibility insurance benefits, alleging disibility beginning September 1, 1996.  R. 11.  Based on the plaintiff's earnings records, she has sufficient quarters of coverage to remain insured through December 31, 2001.  R. 11.  Therefore, the plaintiff must establish that she became disabled on or before December 31, 2001, her date last insured ("DLI").  See 42 U.S.C. § 423(d)(1)(A); Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002).

In the present case the ALJ found that during the relevant period plaintiff's headaches, anxiety disorder and depression were severe impairments.  R. 13. The ALJ determined that none of the plaintiff's impairments, alone or in combination, met or equaled a listed impairment.  R. 13. The ALJ found that prior to the plaintiff's DLI, she had the residual functional capacity (RFC) for work at all exertional levels, however, she could not be exposed to unprotected hazards.  R. 15.  She needed simple instructions and tasks; casual contact with the public; and tactful and non-threatening supervision.  R. 15.  The ALJ also found that workplace changes

should be gradual and well-explained R. 15.  The ALJ found that with this RFC, the plaintiff

could not perform her past relevant work.  R. 20.

Once it is determined the plaintiff cannot return to her prior work, "the burden shifts to

the [Commissioner] to show other work the claimant can do." Foote, at 1559.  When a claimant

is not able to perform the full range of work at a particular exertional level, the Commissioner

may not exclusively rely on the Medical-Vocational Guidelines (the grids).  Foote, at 1558-59.

The presence of a non-exertional impairment (such as pain, fatigue or mental illness) also

prevents exclusive reliance on the grids. Foote, at 1559.  In such cases "the [Commissioner]

must seek expert vocational testimony." Id.  Based upon the plaintiff's RFC and the testimony of

a vocational expert (VE), the ALJ found other work existed in significant numbers that the

plaintiff could perform.  R. 20-21, 813-16.  Because the ALJ found the plaintiff could perform

other work as of her DLI, she found the plaintiff not disabled.  R. 21.

### III.  FACTUAL BACKGROUND

The plaintiff was 48 years old on her alleged onset date, and was 54 years old as of

December 31, 2001, her DLI.  R. 67, 76.  She has at least a high school level education, and her

past relevant work includes work as licensed practical nurse.  R. 20, 81, 89.  The plaintiff claims

she was not able to work as of her DLI due to a variety of conditions, including arthritis,

migraine headaches and depression.  R. 80.

On July 24, 1996, Dr. Moore, the plaintiff's primary care physician, noted the plaintiff

complained of headaches and anxiety, but that she was doing pretty well.  R. 446.  She was to

return for treatment on an as needed basis.  R. 446.  The next treatment note in the record is from

June 18, 1999, when the plaintiff saw Dr. Moore, reporting that she had hardly slept in the last

eight days because she had been up with her mother-in-law.  R. 445.  She reported worsening

headaches, which were not being controlled with Darvocet.[1]  R. 445.

The plaintiff saw Dr. Moore on October 9, 2000, reporting she had been under a great

deal of stress lately while caring for her sister, who was terminally ill with cancer.  R. 438.  She

reported problems with palpitations and sinus symptoms.  R. 438.  Dr. Moore changed the

plaintiff's anxiety medication from Elavil[2] to Paxil.[3]  R. 438.  When the plaintiff was seen by Dr.

Moore on December 19, 2000, she complained of headache, without photophobia.  R. 437.  She

reported episodes of headaches, increased blood pressure, bilateral hand numbness, nausea,

vomiting, sweating, tinnitus, and shortness of breath.  R. 437.  She reported stress because her

terminally ill sister was staying with her.  R. 437.

 On August 29, 2001, the plaintiff complained of sinus congestion and a sore throat.  R.

550.  She also reported continued migraine headaches, which she stated responded only to a

combination of Darvocet and Tranxene.[4]  R. 550.  Dr. Miller noted the plaintiff was not on any

effective medication for prophylaxis of her headaches.  R. 550.  He discussed the risks of

rebound headaches and addiction with Tranxene and Darvocet.  R. 550.  Dr. Miller agreed to

---

[1]  Darvocet is a combination of propoxyphene napsylate and acetaminophen. "Propoxyphene is a centrally acting narcotic analgesic agent."  Physicians' Desk Reference 56th Ed., p. 1907 (2003).

[2]  Elavil (amitriptyline)  is a tricyclic antidepressant.  http://www.drugs.com/elavil.html

[3]  "Paxil (paroxetine) is an antidepressant in a group of drugs called selective serotonin reuptake inhibitors (SSRIs)."  http://www.drugs.com/paxil.html

[4]  Tranxene (the brand name for clorazepate) is a benzodiazepine used for treating anxiety disorders, certain types of seizures, and symptoms of alcohol withdrawal. http://www.drugs.com/cdi/clorazepate.html

continue Darvocet for short term use, but recommended she see a neurologist for long term treatment of her headaches.  R. 549-50.

When the plaintiff was seen by Dr. Moore on September 25, 2001, she was "doing reasonably well" but continued to have problems with headaches.  R. 435.  Dr. Moore noted the plaintiff was scheduled to see a neurologist, and was being followed by Dr. Miller for her headaches.  R. 435.

The plaintiff saw Dr. Miller on October 10, 2001, still complaining of headaches.  R. 549. She had not yet seen the neurologist.  R. 549.  When the plaintiff returned to Dr. Miller on October 25, 2001, she reported having seen Dr. Fagan, who started her on Effexor[5] for her headaches.  R. 548.  On November 21, 2001, the plaintiff reported to Dr. Miller that her headaches were much better, with only a couple of headaches in the previous few weeks.  R. 547.

The plaintiff saw Dr. Moore on November 13, 2001, and reported having a lot of trouble with anxiety.  R. 434.  She reported she was completely off of Tranxene and Darvocet.  R. 434. She reported she was taking Effexor for her headaches.  R. 434.  She reported that it was helping her headaches, but not her anxiety.  R. 434.  Dr. Moore referred the plaintiff to Grayson & Associates for treatment of her anxiety.  R. 434.

On December 10, 2001, the plaintiff began psychiatric treatment with Grayson & Associates.  R. 261-62.  The treatment note shows the plaintiff complained of stress, anxiety, and headaches.  R. 261.  She reported she had been taking care of her terminally ill sister off and on

---

[5] "Effexor (venlafaxine) is an antidepressant in a group of drugs called selective serotonin and norepinephrine reuptake inhibitors (SSNRIs). Venlafaxine affects chemicals in the brain that may become unbalanced and cause depression."  http://www.drugs.com/effexor.html

since September 2000, and that she cared for her grandsons two days a week.  R. 261.  She was diagnosed with Major Depression and Anxiety, and assigned a Global Assessment of Functioning (GAF) score of 70.[6]  R. 262.  Medication  was prescribed and she was to return in four weeks.  R. 262.

Alfred Jonas, M.D., a medical expert and board certified psychiatrist, reviewed the plaintiff's medical evidence and testified at the plaintiff's ALJ hearing.  R. 792, 797-811.  Dr. Jonas testified the plaintiff's conditions that manifested after her DLI, such as hydrocephalus, likely would not have caused complications prior to December 31, 2001.  R. 798.  As to the plaintiff's alleged back pain, Dr. Jonas testified the medical records did not show she had a back impairment that would have significantly limited her ability to work prior to December 30, 2001. R. 798-99.

Dr. Jonas also evaluated the plaintiff's mental impairments.  He testified that there were three possible psychological impairments based on the record.  R. 799.  These were depression (Listing 12.04-1), personality disorder (Listing 12.08), and substance abuse (Listing 12.09).  R. 799.  Dr. Jonas testified that he did not see anything in the medical records to suggest the plaintiff had significant limitations from anxiety.  R. 805.

---

[6]   The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning.  <u>Diagnostic and Statistical Manual of Mental Disorders</u> 30 (4th Edition) ("DSM-IV").  A GAF of 61-70 is defined as some mild symptoms (e.g., depressed mood and mild insomnia), or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, with some meaningful interpersonal relationships. DSM-IV-TR, 34.

Dr. Jonas testified the plaintiff may have had depression during the relevant period, given that she was hospitalized for depression in 1986 and 1987.  R. 800.  However, he testified that hospitalization was not uncommon at that time for "uncomplicated treatment of depression."  R. 800.  He testified that in the plaintiff's case, the discharge summary did not indicate "anything very complicated was going on."  R. 800.  Dr. Jonas concluded that although it was possible the plaintiff suffered from depression after the hospitalization, nothing in the record showed the plaintiff had an important or sustained problem with depression.  R. 800.  Dr. Jonas testified that based on the evidence of record, the plaintiff's depression was not a significant problem during the relevant period prior her DLI:  "I don't see depression in this file . . . as having been a significant, dramatic or particularly impairing problem for Mrs. Horn."  R. 807.

Dr. Jonas testified he saw nothing in the record to suggest the plaintiff's mental impairments would have prevented her from carrying out simple tasks prior to her DLI.  R. 803.  Dr. Jonas also testified the evidence did not suggest the plaintiff had problems with social functioning, concentration, persistence or pace prior to her DLI.  R. 803-04.  Dr. Jonas testified that the medical records did not document the presence of the Listings paragraph B criteria.  R. 804.

A State agency physician assessed the plaintiff's physical capabilities in August 2004, and opined the plaintiff had no exertional limitations as of her DLI.  R. 458.  The State agency psychologist, Dr. Gordon Rankart, Psy.D., evaluated the plaintiff's mental abilities from September 1996 to December 2001, and opined she could understand, remember, and carry out simple tasks.  R. 482.  Dr. Rankart also opined the plaintiff would need causal contact with the

public, tactful and nonthreatening supervision, and would need changes in the workplace to be gradually introduced and well-explained.  R. 482.

## IV.  DISCUSSION

To be eligible for disability insurance benefits the plaintiff must show she became disabled prior to the expiration of her disability insured status.  See 42 U.S.C. § 423(d)(1)(A); Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002).  Based on the plaintiff's earnings records, she has sufficient quarters of coverage to remain insured through December 31, 2001. R. 11. Therefore, the plaintiff must establish that she became disabled on or before December 31, 2001, her date last insured ("DLI").  In her brief the plaintiff discusses numerous treatment records after her DLI.  These treatment records are not relevant to the plaintiff's condition prior to her DLI.  The plaintiff makes several broad arguments, which will be discussed below.

## A.

The plaintiff argues the ALJ erred in finding she had the RFC to perform work at all exertional levels with certain additional restrictions.  She argues  the "totality of the evidence" places the plaintiff in the sedentary category.  Pl.'s Br. 10.  This argument rests primarily upon the plaintiff's testimony about her symptoms prior to her DLI.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995)

> The pain standard requires (1) evidence of an underlying medical condition and
> either (2) objective medical evidence that confirms the severity of the alleged pain
> arising from that condition or (3) that the objectively determined medical
> condition is of such a severity that it can be reasonably expected to give rise to the
> alleged pain.

Id. (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). If an ALJ discredits a claimant's subjective complaints, he must give "explicit and adequate reasons" for his decision. See id. at 1561-62. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Id. at 1562. The ALJ's credibility determination need not cite "particular phrases or formulations" as long as it enables the court to conclude that the ALJ considered the plaintiff's medical condition as a whole. See Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (citing Foote, 67 F.3d at 1561).

The ALJ found the plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. R. 18. Therefore, the plaintiff met the requirements of the Eleventh Circuit pain standard. However, the ALJ found the plaintiff's allegations of an inability to perform any significant work activities during the relevant period were not fully credible. R. 16. The ALJ observed that during the relevant period, the plaintiff "cared for her terminally ill sister which the medical evidence shows was quite stressful and demanding both physically and mentally." R. 16. She also considered the plaintiff's daily activities, which included "talking on the phone, occasionally shopping, [and] doing enough cleaning/cooking to get by." R. 16. The ALJ found the almost three year gap in treatment (July 1996 to June 1999) was inconsistent with her testimony that she was confined to her home because of her impairments. R. 16. She observed the plaintiff's level of treatment before and after that gap made it unlikely that she suffered the severe symptoms she alleged during that time. R. 16. The ALJ also noted that when the plaintiff resumed treatment, "there is no mention of disabling symptoms during that time." R. 17. For these reasons, the ALJ found the plaintiff's subjective complaints were inconsistent with the objective medical evidence, and not fully credible. R. 17.

10

Therefore, the ALJ articulated explicit reasons for not crediting the plaintiff's allegations of disabling symptoms, and the court finds those reasons are supported by substantial evidence.

The ALJ also considered the medical evidence and determined the plaintiff's impairments during the relevant period would not cause limitations more restrictive than provided for in her RFC.  In her consideration of the evidence, the ALJ relied upon the testimony of the medical expert, Dr. Jonas.  The ALJ gave great weight to the testimony of Dr. Jonas, because it was consistent with the overall medical evidence.  R. 17.  In determining how much weight to give to each medical opinion, the ALJ must consider several factors including: (1) whether the doctor has examined the plaintiff; (2) whether the doctor has a treating relationship with the plaintiff; (3) the extent to which the doctor presents medical evidence and explanation supporting his opinion; (4) whether the doctor's opinion is consistent with the record as a whole; and (5) whether the doctor is a specialist.  C.F.R. §§ 404.1527(c), 416.927(c).  Dr. Jonas is a specialists in the field of psychiatry.  R. 792.  His opinions are also consistent with the record as a whole. Therefore, the ALJ correctly applied these factors in giving great weight to Dr. Jonas' testimony.

The ALJ found the plaintiff's allegations of chronic and severe headaches prior to her DLI were not supported by the medical evidence.  She noted Dr. Moore treated the plaintiff's headache pain with Darvocet, but there was no evidence she had been on a prophylaxis regimen. R. 18.  The ALJ observed that after Dr. Miller prescribed Effexor, the plaintiff's headaches improved.  R. 18-19.  The ALJ noted Dr. Jonas testified the plaintiff's hydrocephalus would not have been likely cause complications in 2001.  R. 798.  She concluded that although there was some evidence of sinus and migraine headaches prior to the plaintiff's DLI, the preponderance of

the evidence did not support disabling symptoms from those headaches.  R. 19.  This finding is reasonable and supported by substantial evidence.

The ALJ found the evidence did not support the plaintiff's allegations of disabling back pain prior to her DLI.  R. 19.  She noted that treatment notes indicating back pain began in October 2002, well after the plaintiff's DLI.  R. 19.  The ALJ also found the absence of emergency room visits or other outpatient treatment for the plaintiff's back pain during the relevant period was inconsistent with her allegations of disabling back pain.  R. 19.  These findings are supported by substantial evidence.

The ALJ concluded the plaintiff's mental impairments did not cause disabling symptoms prior to the plaintiff's DLI.  The ALJ based this finding on the lack of treatment for those conditions and the testimony of the medical expert, Dr. Jonas.  The ALJ noted Dr. Jonas found "no medical evidence to support significant problems with depression before December 2001." R. 17.  The ALJ also observed Dr. Jonas testified the plaintiff would have had no problems with simple tasks in spite of her depression and anxiety prior to her DLI.  R. 17.  The ALJ found that throughout the relevant time period, there was no substantial evidence to support non-exertional impairments that would have precluded work activity as described in her RFC finding.  17-18. She noted the gap in treatment between July 1996 and June 1999.  R. 19.  She also noted the plaintiff's treating psychiatrist had found only mild symptoms due to the plaintiff's anxiety and depression.[7]  R. 18.  The ALJ observed that even thought the plaintiff's "symptoms were exacerbated by stress at home . . . she continued to function without significant limitations." R.

---

[7]  This is a reference to the GAF score of 70 assessed on December 10, 2001, when she was seen at Grayson & Associates.  R. 261-62.  That is the only treatment note during the relevant period from a psychiatrist or other mental health specialist.

18.  Dr. Jonas' testimony and the medical evidence relied upon by the ALJ provide substantial

evidence to support the ALJ's RFC finding with respect to non-exertional limitations caused by

the plaintiff's mental  impairments.

The ALJ did not err in failing to include limitations in the plaintiff's RFC based on her

alleged symptoms.  The ALJ's RFC finding is supported by the medical evidence of record, and

also by the testimony of Dr. Jonas, which she properly gave great weight.  The plaintiff's

argument on this issue is without merit.

**B.**

The plaintiff also argues that she meets Listings 12.04 Affective Disorders, 12.06 Anxiety

Related Disorder, and 12.09 Substance Addiction Disorders.[8]  Pl.'s Br. 12.  Each of the Listings

cited by the plaintiff require her to document the "impairment-related functional limitations that

are incompatible with the ability to do any gainful activity."  Listing 12.00.  This requires the

plaintiff to meet either the paragraph B or paragraph C criteria of the relevant listing.

The ALJ considered whether the plaintiff's mental impairments met or equaled the

criteria of Listing 12.04.[9]  R. 14.  She determined the plaintiff did not meet the paragraph B

criteria, which requires at least two of the following:  marked restriction of activities of daily

living; marked difficulties in maintaining social functioning; marked difficulties in maintaining

---

[8]  The Listing for Substance Addiction Disorders provides that it will be met if substance addiction causes impairments satisfying the requirements of one of nine specified Listings.  The Listings relevant to the present case are Listing 12.04 and Listing 12.06.  If the plaintiff's functional limitations do not meet those listings, she would not meet Listing 12.09.

[9]  Although the ALJ cites Listing 12.06, her discussion of the paragraph C criteria shows she was actually considering Listing 12.04.  The paragraph B criteria are the same for both Listings.  The paragraph C criteria are different.

social functioning; or repeated episodes of decompensation each of extended duration.  Listing 12.04B, Listing 12.06B.  The ALJ found the plaintiff had only moderate difficulties in the first three criteria.  R. 14.  She found the plaintiff had no episodes of decompensation during the relevant time period.  R. 14.  These findings are supported by the medical records, which do not show more than moderate restrictions in these areas during the relevant period of time.  It is also supported by the testimony of Dr. Jonas, who testified the medical records did not document the presence of the Listings' paragraph B criteria.  R. 804.  Therefore, substantial evidence supports the ALJ's determination that the paragraph B criteria were not met.

The ALJ also considered the paragraph C criteria under Listing 12.04, which requires a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities."  Listing 12.04C.  The ALJ found there " is no evidence of a chronic affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do basic work activities."  R. 14.  Dr. Jonas' testimony that he did not see depression "as having been a significant, dramatic or particularly impairing problem" for the plaintiff during the relevant time period supports the ALJ's finding.  R. 807.  Therefore, the ALJ's finding that the plaintiff did not meet Listing 12.04 is supported by substantial evidence.

The paragraph B criteria for Listing 12.06 is identical to that of Listing 12.04.  The paragraph C criteria for Listing 12.06 requires the plaintiff's anxiety disorder to result "in complete inability to function independently outside the area of [her] home."  Listing 12.06C.  There is no evidence in the record to support such a restriction during the relevant period of time.  As discussed above, the ALJ did not err in refusing to credit the plaintiff's testimony that she was

14

confined to her home because of her impairments.  Therefore, the ALJ properly found the

plaintiff did not meet Listing 12.06.

Because the plaintiff did not show she met the paragraph B or C criteria for either  Listing

12.04 or Listing 12.06, the ALJ did not err in finding those Listings were not met.  For the

plaintiff to meet Listing 12.09 for substance addiction, she would have had to meet one of those

two Listings.  Therefore, plaintiff's argument is without merit.

## C.

The plaintiff submitted an evidentiary supplement to her brief, which contained treatment

records from Hillcrest Hospital dated February 1987 and a psychological examination by Dr.

Holt from March 1987.  (Doc. 9.)  These records are not part of the administrative record and

cannot be considered by this court in determining whether substantial evidence supports the

ALJ's decision.  See Ingram v. Comm'r of Soc. Sec. Admin, 496 F.3d 1253, 1267-68 (11th Cir.

2007) (stating "a reviewing court is limited to the certified administrative record in examining

the evidence") (quoting Calder v. Bowen, 791 F.2d 872, 876 (11th. 1986)).  Although the plaintiff

has not asked for a remand under sentence six of 42 U.S.C. § 405(g), the court finds such a

remand is not warranted.

In this circuit a three prong test is applied to determine whether a remand for

consideration of new evidence is proper pursuant to sentence six of 42 U.S.C. § 405(g).  The

claimant must establish:

(1)      That there is new, noncumulative evidence;

(2)      That the evidence is material; and

(3)     That there is good cause for failure to submit the evidence at the administrative level.

<u>Caulder v. Bowen</u>, 791 F.2d 872, 877 (11th Cir. 1986).  To be material the proffered evidence must be "relevant and probative so that there is a reasonable possibility that it would change the administrative result." <u>Id.</u>  The evidence submitted does not satisfy the first or second requirement for remand under sentence six.  The evidence is cumulative because it is similar to other records from Lloyd Nolan Hospital from December 1986 and January 1987.  R. 484-85.  The evidence is also not material because it would be unlikely to change the administrative result.  The evidence was well before the plaintiff's alleged onset date.  The ALJ considered other similar evidence from the 1980's and found it not relevant.  Therefore, the evidence does not satisfy the requirements for remand under sentence six of 42 U.S.C. § 405(g).

## V. CONCLUSION

The court concludes the ALJ's determination that the plaintiff is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in arriving at this decision.  Accordingly, the Commissioner's final decision is due to be affirmed. An appropriate order will be entered contemporaneously herewith.

**DONE**, this 30th day of September, 2013.

SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE

16